# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| JEFFREY SCOTT COX, an incapacitated individual, by and through his mother and next friend, ELVIRA COX<br><br>Plaintiff,<br><br>vs.<br><br>BOAR'S HEAD PROVISIONS, CO., INC.<br><br>Defendant. | Civil Action No: 5:24 cv 1141 HNJ<br><br>**JURY TRIAL REQUESTED** |

FILED AUG 19 2024 UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ALABAMA

## COMPLAINT

COMES NOW the Plaintiff, JEFFREY SCOTT COX, an incapacitated individual, by and through his mother and next friend, ELVIRA COX, and files this Complaint against Boar's Head Provisions, Co., Inc. ("Boar's Head") stating as follows:

### INTRODUCTION

1. The above-styled case arises from a multistate outbreak of the deadly foodborne pathogen *Listeria monocytogenes*.

2. Defendant Boar's Head Provisions, Co., Inc. produced, distributed and sold deli meat contaminated with *Listeria monocytogenes* throughout the country, thereby exposing countless people to the risk of severe illness and/or death.

1

3. Jeffrey Scott Cox was one such person. Cox contracted a *Listeria monocytogenes* infection from Boar's Head deli meats purchased at a Publix supermarket and is currently hospitalized in critical condition as a direct and proximate result. This case seeks to hold Defendants responsible for all the harm caused by its contaminated products.

**PARTIES**

4. Jeffrey Scott Cox is an adult over nineteen (19) years of age and a citizen of the United States who, at all times relevant and material to the acts, omissions, occurrences, and events made the basis of this Complaint, was a resident of Madison County, Alabama. His mother and next friend, Elvira Cox, is also an adult over nineteen (19) years of age who, at all times relevant and material to the acts, omissions, occurrences, and events made the basis of this Complaint, was a resident of Madison County, Alabama.

5. Defendant Boar's Head Provisions, Co., Inc. (hereinafter "Boar's Head") is, and at all times relevant and material to the acts, omissions, occurrences, and events made the basis of this Complaint was, a corporation organized under the laws of the State of Delaware with its principal place of business and corporate headquarters located at 1819 Main Street, Suite 800, Sarasota, Florida, 34236. Defendant Boar's Head is a foreign corporation and not a resident of the State of Alabama.

## JURISDICTION AND VENUE

6. This Court has proper jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7. Venue is proper in The United States District Court for the Northern District of Alabama pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events, occurrences, acts, or omissions giving rise to the claims occurred in this District and both Jeffrey Scott Cox and Elvira Cox are domiciled in this District.

## FACTUAL ALLEGATIONS

8. Listeriosis is a serious illness resulting from consumption of food contaminated with the *bacteria Listeria monocytogenes*.

9. *Listeria monocytogenes* is one of the most virulent and deadly foodborne pathogens with a fatality rate of more than twenty percent (20%). Virtually all individuals who contract listeriosis require hospitalization.

10. The bacteria can be killed by cooking or pasteurizing food products; however, contact with *Listeria monocytogenes* after such a "kill-step" will re-contaminate the food product.

11. This risk is heightened because *Listeria monocytogenes* tends to thrive in food processing environments, particularly in floor drains and other cool damp

areas. Moreover, *Listeria monocytogenes* can be easily transferred from one area of a processing facility to another through various means such as water, mist, simple touching of equipment, or on workers and their clothes, shoes, and hands.

12. Additionally, in contrast to most other harmful bacteria, *Listeria monocytogenes* will continue to grow slowly on foods stored in a refrigerator and freezing has very little detrimental effect on the organism.

13. These characteristics render ready-to-eat deli meats particularly susceptible to *Listeria monocytogenes* contamination.

14. The risks of deli meat contamination with *Listeria monocytogenes* have been well-known and documented in the industry for decades, particularly because of a massive turkey deli meat outbreak in 2002 in which seven (7) individuals were killed and three (3) pregnant women lost their unborn children.

15. Indeed, the regulations of the United States Department of Agriculture establish a "zero tolerance' policy for *Listeria monocytogenes* in ready-to-eat meat products, including deli meats. This means that *any amount* of the bacteria in deli meats renders the product adulterated within the meaning of the United States Food Drug and Cosmetic Act

16. As such, responsible manufacturers of deli meat must maintain and follow strict hygienic practices in their processing facilities and must implement

robust environmental and product testing programs to prevent the contamination of either their products or their processing facilities with *Listeria monocytogenes*.

17. Once a food product, including deli meat, is adulterated with *Listeria monocytogenes*, the pathogen can easily be transferred to other food products or food production surfaces if strict sanitation procedures are not followed. For example, if a knife, deli slicer, or other cutting utensil is used to cut into deli meat that is adulterated with *Listeria monocytogenes* and is not properly cleaned and sanitized immediately thereafter, pathogens remaining on the knife or slicer can the cross-contaminate other food products and surfaces. This problem is particularly significant in the case of cross contamination of ready-to-eat foods, since they are not subject to any further "kill-steps" necessary to deactivate or kill the pathogens.

18. Because of the risks posed by *Listeria monocytogenes*, the Centers for Disease Control and Prevention (hereafter "CDC"), in collaboration with state public health officials, actively monitor listeriosis cases throughout the country.

19. State and CDC labs routinely subject samples of *Listeria monocytogenes* obtained from infected individuals to a genetic subtyping process known as Whole Genome Sequencing (WGS). The results, which are analogous to a genetic fingerprint, are subsequently uploaded into a national database used to determine whether illnesses were caused by a common genetic strain of *Listeria monocytogenes*.

20. Through the use this WGS system, the CDC detected a unique genetic pattern of *Listeria monocytogenes* among listeriosis patients in June and July of 2024.

21. As of August 8, 2024, the CDC had identified 43 people from 13 states who had contracted this unique strain of *Listeria* (hereafter the "Outbreak Strain"). Each of those 43 individuals were hospitalized as a result of their illness. According to the CDC, the true number of sick people in this outbreak is likely higher than the number reported, and the outbreak may not be limited to the states with known illnesses.

22. As part of the inquiry into the above-referenced outbreak, CDC, state, and local public health officials have conducted an extensive epidemiological investigation to determine the source of the Outbreak Strain.

23. Food consumption histories were obtained for individuals afflicted by the Outbreak Strain (case patients). Of the thirty-four (34) people able to be interviewed by public health investigators, thirty-two (32) (94%) reported eating deli meats. Of those individuals, thirty (30) (94%) reported eating meats sliced at a deli, while the other two (2) could not recall if their meats were sliced at the deli.

24. Additionally, the CDC conducted an analysis comparing foods reported by people in this outbreak to foods reported by people who got sick with Listeria but were not part of an outbreak. The analysis showed that people in this outbreak were

6

more likely to eat deli-sliced turkey and liverwurst. This analysis showed that deli-sliced liverwurst and turkey were likely vehicles for the outbreak strain.

25. On or about July 17, 2024, officials from the Maryland Department of Health and Baltimore City Health Department collected an unopened Boar's Head liverwurst product and tested it for the presence of Listeria. The results of that testing were positive.

26. After this positive test became known, Boar's Head initiated a voluntary limited recall of certain liverwurst and other products on July 26, 2024.

27. The positive Listeria sample was sent to CDC for further testing to confirm whether it matched the Outbreak Strain; on July 30, 2024, CDC confirmed that the Listeria found in the Boar's Head liverwurst was indeed the Outbreak Strain.

28. On July 30, 2024, Boar's Head expanded its recall to include approximately 7 million additional pounds of ready-to-eat deli meat (including varieties of liverwurst, ham, and bologna) and poultry products, all produced at its Jarratt, Virginia processing facility.

29. The Boar's Head products that were eventually subject to recall were shipped to the Publix deli in Madison County, Alabama where Plaintiff purchased deli meats prior to the development of his severe illness and injuries as described below.

## Jeffrey Scott Cox's Listeria Infection

30. In late July 2024, Jeffrey Scott Cox (hereinafter, "Cox") consumed Boar's Head Bologna purchased from a Publix supermarket located at 12796 Bailey Cove Road SE, Huntsville, Alabama, 35803.

31. Unbeknownst to Cox, the deli meat he purchased and consumed was contaminated with the Outbreak Strain of *Listeria monocytogenes* (hereinafter "Listeria"). Shortly thereafter, he became severely ill and began exhibiting fever, headaches, nausea, and other related symptoms.

32. Cox subsequently presented to Crestwood Hospital, where he had difficulty breathing and began to exhibit weakness or "drooping" on one side of his face. He also developed excess mucus in his throat to the extent that a tube had to be inserted into his throat to assist in removal of the material. The dramatic deterioration of his condition eventually required that he be placed on a ventilator that night.

33. Cox was later transferred to Huntsville Hospital, where he remained on a ventilator. On or about August 7, 2024, a spinal tap was conducted. The results of that test were positive for listeria.

34. Cox continued to exhibit a significantly elevated temperature for approximately two (2) weeks. His healthcare providers have administered antibiotics and other medications to combat the Listeria infection and its effects, but


Cox has remained incapacitated for the entirety of his hospitalization. He is unable to communicate, and it is currently unclear if he will survive.

35. The actions of Defendant Boar's Head caused or contributed cause the incident that forms the basis of this litigation. As a direct and proximate result of the incident made the basis of this litigation, Jeffrey Scott Cox has suffered and incurred severe and permanent injuries and/or damages.

## COUNT ONE
## (AEMLD – Strict Product Liability)

36. Plaintiff adopts, incorporates, and re-alleges all prior paragraphs of this Complaint as if set forth fully herein.

37. At all times material and relevant to this Complaint, Defendant Boar's Head sourced, processed, manufactured, produced, distributed, marketed, and sold the contaminated and/or adulterated deli meat that is the subject of this action.

38. Defendant Boar's Head ordinarily engaged in the business of sourcing, processing, manufacturing, producing, distributing, marketing, selling, and/or placing deli meats on the market and/or in the stream of commerce, and did source, process, manufacture, produce, distribute, sell, market, and/or place contaminated and/or adulterated deli meats on the market and/or in the stream of commerce during the incident made the basis of this litigation.

39. The contaminated deli meat was, at the time it left Boar's Head's control, defective and unreasonably dangerous for its ordinary and expected use by

ordinary consumers because it was contaminated by Listeria, a virulent and deadly bacterial pathogen.

40. The contaminated deli meat was unreasonably dangerous, because it created a strong likelihood of injury to individuals such as Scott Cox, if it was consumed in the normal and expected manner.

41. Deli meat that is contaminated with Listeria is extremely and unreasonably dangerous if consumed. Moreover, ordinary consumers like Scott Cox cannot detect Listeria contamination.

42. The contaminated deli meat that Scott Cox consumed was contaminated with Listeria when it left Boar's Head's control. It reached Cox in substantially the same condition and was used in expected and intended manner when it was consumed by Cox.

43. Boar's Head owed a duty of care to Scott Cox to process, manufacture, produce, distribute, market, and/or sell food products that were not adulterated, that were fit for human consumption, that were reasonably safe, and that were free of pathogenic bacteria or other substances injurious to human health. Boar's Head breached that duty by processing, manufacturing, producing, distributing, marketing, and/or selling deli meat contaminated with Listeria, which is patently unfit for human consumption and is unsafe and injurious to human health.

44.     As a direct and proximate result of Boar's Head's acts and omissions, Scott Cox consumed Listeria-contaminated deli meat that caused serious illness.

45.     As a direct and proximate result of the Defendant's wrongful conduct and the defect of Defendant's product, Scott Cox has suffered the following injuries and damages:

   a. Scott Cox has been caused to suffer severe, substantial, and permanent injuries to his body and will be caused to suffer severe, substantial, and permanent injuries to his body in the future;

   b. Scott Cox has incurred various out-of-pocket and personal expenses and costs and will incur various out-of-pocket and personal expenses and costs in the future;

   c. Scott Cox has been caused to incur significant medical expenses for medical treatment, medications, physician's fees, nursing services and other related charges for health care, and will be caused to continue to incur such expenses in the future;

   d. Scott Cox has been caused to undergo painful and expensive medical procedures, and will be caused to undergo painful and expensive medical procedures in the future;

   e. Scott Cox has lost income, wages, and earning capacity and will lose wages, income, and earning capacity in the future;

   f. Scott Cox has experienced substantial pain and suffering, mental anguish, and emotional distress, and will experience substantial pain and suffering, mental anguish, and emotional distress in the future;

   g. Scott Cox has become permanently disfigured and/or permanently impaired; and

   h. Scott Cox has become unable to enjoy and perform the activities of daily living that he was able to enjoy and perform prior to the incident made the basis of this Complaint.

46. Plaintiff is therefore entitled to and hereby demands all damages available at law (including compensatory damages, special damages, and punitive damages) in an amount to be determined by a struck jury at trial.

## COUNT TWO
### (Breach of Implied Warranty of Merchantability)

47. Plaintiff adopts, incorporates, and re-alleges all prior paragraphs of this Complaint as if set forth fully herein.

48. By offering its food products for sale to the general public, Boar's Head impliedly warranted that its food products were merchantable and fit for human consumption.

49. Boar's Head's contaminated deli meat contained Listeria and was not merchantable, was not fit for human consumption, and was injurious to health.

50. As a direct and proximate result of Boar's Head's acts and omissions, Scott Cox consumed Listeria-contaminated deli meat that caused serious illness and permanent injuries and damages.

51. As a direct and proximate result of Defendant's wrongful conduct, the defect of Defendant's product, and Defendant's breach of the implied warranty of merchantability, Scott Cox has suffered the following injuries and damages:

    a. Scott Cox has been caused to suffer severe, substantial, and permanent injuries to his body and will be caused to suffer severe, substantial, and permanent injuries to his body in the future;

    b. Scott Cox has incurred various out-of-pocket and personal expenses and costs and will incur various out-of-pocket and personal expenses and costs in the future;

    c. Scott Cox has been caused to incur significant medical expenses for medical treatment, medications, physician's fees, nursing services and other related charges for health care, and will be caused to continue to incur such expenses in the future;

    d. Scott Cox has been caused to undergo painful and expensive medical procedures, and will be caused to undergo painful and expensive medical procedures in the future;

    e. Scott Cox has lost income, wages, and earning capacity and will lose wages, income, and earning capacity in the future;

    f. Scott Cox has experienced substantial pain and suffering, mental anguish, and emotional distress, and will experience substantial pain and suffering, mental anguish, and emotional distress in the future;

    g. Scott Cox has become permanently disfigured and/or permanently impaired; and

    h. Scott Cox has become unable to enjoy and perform the activities of daily living that he was able to enjoy and perform prior to the incident made the basis of this Complaint.

52. Plaintiff is therefore entitled to and hereby demands all damages available at law (including compensatory damages, special damages, and punitive damages) in an amount to be determined by a struck jury at trial.

### COUNT THREE
### (Negligence *Per Se*)

53. Plaintiff adopts, incorporates, and re-alleges all prior paragraphs of this Complaint as if set forth fully herein.

54. Scott Cox consumed a food product sourced, processed, manufactured, produced, distributed, marketed, and sold by Boar's Head that was adulterated because it contained Listeria, a deadly bacterial pathogen.

55. Both federal law and Alabama law prohibit the sale of adulterated food products.

56. Boar's Head, as a provider of food products in the United States of America, owed a duty to Cox to comply with 21 U.S.C. § 331 of the Federal Food, Drug, and Cosmetic Act, which states in part:

57. The following acts and the causing thereof are prohibited:

    a. The introduction or delivery for introduction into interstate commerce of any food . . . that is adulterated or misbranded;

    b. The adulteration or misbranding of any food . . . in interstate commerce;

    c. The receipt in interstate commerce of any food . . . that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise.

58. Pursuant to 21 U.S.C. § 342, a food is "adulterated" if it "bears or contains any poisonous or deleterious substance which may render it injurious to health."

59. Any product sold into interstate commerce that is contaminated with Listeria is adulterated, thereby violating federal law.

60. Boar's Head, as a provider of food products to consumers in the State of Alabama, also owed a duty to Scott Cox to comply with Ala. Code § 20-1-27.

61. Under Alabama Food Law (Ala. Code § 20-1-27), it is illegal to "[m]anufacture for sale herein, have in his or her possession with intent to sell, offer or expose for sale, sell, or deliver any article of food or drugs which is adulterated or misbranded within the meaning of this definition."

62. According to Ala. Code § 20-1-22 food is adulterated, "[i]f it contains any poisonous or deleterious ingredient which may render such article injurious to health."

63. Any product sold in the State of Alabama that is contaminated with Listeria is adulterated, violating Alabama law.

64. Both federal law and Alabama law are designed to protect food consumers, like Scott Cox, from damages caused by food that is adulterated by bacterial pathogens like Listeria. Scott Cox therefore falls within the class of people that are intended to be protected by these laws.

65. By sourcing, processing, manufacturing, producing, distributing, marketing, selling, and/or placing into interstate commerce the deli meat products that were contaminated with Listeria, Defendant Boar's Head violated 21 U.S.C. § 331 and was therefore negligent *per se*.

66. By processing, manufacturing, producing, distributing, marketing, selling, and/or placing into the stream of commerce in the State of Alabama deli meat

products that were contaminated with Listeria, Defendant Boar's Head violated Ala. Code § 20-1-27 and was therefore negligent *per se*.

67. The acts and omissions of Defendant Boar's Head in violation of these laws proximately and directly caused the injuries and damages sustained by Scott Cox.

68. As a direct and proximate result of Boar's Head's acts and omissions, Cox consumed Listeria-contaminated deli meat that caused serious illness, injury, and damages.

69. As a direct and proximate result of the Defendant's wrongful conduct, the defect of Defendant's product, and Defendant's breach of the implied warranty of merchantability, Scott Cox has suffered the following injuries and damages:

    a. Scott Cox has been caused to suffer severe, substantial, and permanent injuries to his body and will be caused to suffer severe, substantial, and permanent injuries to his body in the future;

    b. Scott Cox has incurred various out-of-pocket and personal expenses and costs and will incur various out-of-pocket and personal expenses and costs in the future;

    c. Scott Cox has been caused to incur significant medical expenses for medical treatment, medications, physician's fees, nursing services and other related charges for health care, and will be caused to continue to incur such expenses in the future;

    d. Scott Cox has been caused to undergo painful and expensive medical procedures, and will be caused to undergo painful and expensive medical procedures in the future;

e. Scott Cox has lost income, wages, and earning capacity and will lose wages, income, and earning capacity in the future;

f. Scott Cox has experienced substantial pain and suffering, mental anguish, and emotional distress, and will experience substantial pain and suffering, mental anguish, and emotional distress in the future;

g. Scott Cox has become permanently disfigured and/or permanently impaired; and

h. Scott Cox has become unable to enjoy and perform the activities of daily living that he was able to enjoy and perform prior to the incident made the basis of this Complaint.

70. Plaintiff is therefore entitled to and hereby demands all damages available at law (including compensatory damages, special damages, and punitive damages) in an amount to be determined by a struck jury at trial.

## **COUNT FOUR**
### **Negligence/Wantonness**

71. Plaintiff adopts, incorporates, and re-alleges all prior paragraphs of this Complaint as if set forth fully herein.

72. Defendant Boar's Head owed a duty to all consumers, including Scott Cox, to produce food that was safe to eat, that was not adulterated or contaminated by harmful bacterial pathogens, and that was not in violation of applicable food safety regulations.

73. Defendant Boar's Head negligently and/or wantonly breached this duty by, among other acts and omissions:

17

a. Failing to adequately inspect and test the facilities and instruments used in the sourcing, processing, manufacturing, production, distribution, marketing, and sale of deli meat products;

b. Failing to maintain proper sanitation in its facilities;

c. Failing to adequately inspect and test its deli meat products;

d. Failing to follow safe practices in the sourcing, processing, manufacturing, production, distribution, marketing, storage, packaging, handling, labeling, and transportation of its deli meat products;

e. Failing to warn distributors, retailers, and consumers of the adulteration or potential adulteration of its deli meat products;

f. Misrepresenting the quality, safety, and suitability for consumption of its deli meat products; and

g. Other acts and omissions as revealed through discovery.

74. As a direct and proximate result of the Defendant's negligent, wanton, and/or otherwise wrongful conduct, Scott Cox has suffered the following injuries and damages:

a. Scott Cox has been caused to suffer severe, substantial, and permanent injuries to his body and will be caused to suffer severe, substantial, and permanent injuries to his body in the future;

b. Scott Cox has incurred various out-of-pocket and personal expenses and costs and will incur various out-of-pocket and personal expenses and costs in the future;

c. Scott Cox has been caused to incur significant medical expenses for medical treatment, medications, physician's fees, nursing services and other related charges for health care, and will be caused to continue to incur such expenses in the future;

    d. Scott Cox has been caused to undergo painful and expensive medical procedures, and will be caused to undergo painful and expensive medical procedures in the future;

    e. Scott Cox has lost income, wages, and earning capacity and will lose wages, income, and earning capacity in the future;

    f. Scott Cox has experienced substantial pain and suffering, mental anguish, and emotional distress, and will experience substantial pain and suffering, mental anguish, and emotional distress in the future;

    g. Scott Cox has become permanently disfigured and/or permanently impaired; and

    h. Scott Cox has become unable to enjoy and perform the activities of daily living that he was able to enjoy and perform prior to the incident made the basis of this Complaint.

75. Plaintiff is therefore entitled to and hereby demands all damages available at law (including compensatory damages, special damages, and punitive damages) in an amount to be determined by a struck jury at trial.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERD**, Plaintiff prays judgment against the Defendant Boar's Head Provisions, Co., Inc. for all damages available at law (including compensatory damages, special damages, and punitive damages) in an amount greater than Seventy-Five Thousand Dollars ($75,000.00) to be determined by a struck jury, together with pre-judgment and post-judgment interest, costs, and disbursements incurred herein, and such other relief as the court may find just and equitable.

## JURY DEMAND

**PLAINTIFF DEMANDS TRIAL BY A STRUCK JURY.**

Respectfully submitted,

*/s/ Dennis E. Goldasich, Jr.*
Dennis E. Goldasich, Jr. (ASB-5935-D62D)
Joshua M. Vick (ASB-1474-S7OV)
W. Slade Methvin (ASB-5216-U48A)
*Counsel for the Plaintiff*
**GOLDASICH, VICK & FULK**
2100 Third Avenue North, Suite 400
Birmingham, Alabama 35203
Phone: (205) 731-2566
Fax: (205) 731-9451
Email: dennis@golaw.net
Email: josh@golaw.net
Email: slade@golaw.net

## CERTIFICATE OF SERVICE

I hereby certify that upon receiving a copy of the executed summons and filed complaint, a copy of the foregoing will be served upon all parties via process server, which will provide individual notification of such filing to the following entities:

**Boar's Head Provisions, Co., Inc.**
c/o Registered Agent Corporation Service Company
1201 Hays Street
Tallahassee, Florida 35302-2525

*/s/ Dennis E. Goldasich, Jr.*
OF COUNSEL